### JOSEPH GOOCHIE *v.* LUCIUS BROCK.

#### *Contract.   Payment.*

Defendant, having bought cattle of plaintiff, offered him in payment a check greater than the price thereof, but, plaintiff being unable to give defendant money for the difference, it was agreed that defendant should take the check to A., to be sent to a bank to be cashed, and defendant took it to A. accordingly, and directed A. to pay plaintiff the price of the cattle, which A. agreed to do.   Defendant afterwards told plaintiff what he had done, and plaintiff said it was " all right."   A., in sending the check to the bank, directed that it should be placed to his credit.   Afterwards plaintiff called on A. for the money, but not needing it, agreed with A. that A. should keep it thirty days.   *Held*, that as plaintiff assumed to deal with the money, he had in legal effect received payment of defendant, and that it made no difference that the check was put to A's credit.

ASSUMPSIT.   The case was referred, and the referee reported the following facts :

About October 1, 1877, the defendant bought of the plaintiff a yoke of steers, agreeing to pay therefor $65 in money, and beef of the value of $1, in one month thereafter.   On or about November 6, the parties met, and the defendant offered the plaintiff a good check, drawn by Charles Stewart, on Landaugh & Co., of Chicago, for $100, in payment, proposing that the plaintiff pay him the difference between the debt and the check.   The plaintiff replied that he had not the money, whereupon the defendant said he would take the check to J. D. Abbott, who was then one of the directors of the Merchants' Bank of St. Johnsbury, and accustomed to pay checks, or take them and send them to the bank for collection, and let him send it to the bank.   The plaintiff replied that he wanted the money the day after the morrow, but that " it would be there as soon as he wanted it."   The defendant thereupon took the check to Abbott, telling him to pay to the plaintiff $65 of the money to be received therefor, which Abbott agreed to do, and Abbott wrote to the cashier of the bank, enclosing the check, and saying, " Find check of Charles Stewart.   He is good.   Credit to account "; and the check was credited in accordance therewith. The defendant mailed the letter at Abbott's request, not knowing

the contents, so far as appeared, and afterwards met the plaintiff and told him what he had done, to which the plaintiff replied, " That is all right." On that day, or within a few days thereafter, the plaintiff called on Abbott for the $65, but said to him that the money would not be available to him for thirty days for the purpose for which he had wanted to use it, and that if it would be any accommodation to Abbott to keep it for that length of time, he could do so. Abbott replied that it would, and it was then agreed that Abbott should keep it. About ten days afterwards the defendant met the plaintiff and asked him, " How is it about that money up to Abbott's ?" to which the plaintiff replied, " It is all right." And on another occasion at about the same time, the defendant's brother asked the plaintiff if he had seen the defendant about the pay for the steers, and the plaintiff replied that it was all right—it was settled. From what the plaintiff said on these occasions, the referee found that the defendant had a right to and did understand that the plaintiff had received the money from Abbott. The plaintiff in fact never received the $65, and on December 26, 1877, Abbott became insolvent. The referee found that if the court should be of opinion that the defendant was still indebted, he was indebted in the sum of $71.17, on June 3, 1879, but that if what had taken place operated as a discharge to the defendant, there was nothing due.

At the June Term, 1879, Caledonia County, the court, Ross, J., presiding, rendered judgment on the report for the defendant ; to which the plaintiff excepted.

*Henry C. Bates* and *Harry Blodgett*, for the plaintiff.

The check was the defendant's property ; the defendant made Abbott his agent ; Abbott converted the check ; and the agreement between Abbott and the plaintiff was procured by Abbott's fraud. Hence, the loss must fall on the defendant. *Passumpsic Bank* v. *Goss*, 31 Vt. 315 ; *Farmers & Mechanics' Bank* v. *Humphrey*, 36 Vt. 554 ; *Barber* v. *Britton*, 26 Vt. 112.

The plaintiff is not estopped by reason of anything he said to the defendant.

*Belden & Ide*, for the defendant.

The debt was paid by the transaction between the parties and Abbott.

The plaintiff is estopped from setting up any claim by what occurred between him and the defendant and Abbott. *Strong* v. *Ellsworth*, 26 Vt. 366, 373 ; *Hickok* v. *Farmers & Mechanics' Bank*, 35 Vt. 476 ; *Shaw* v. *Beebe*, 35 Vt. 204 ; *Manufacturers' Bank of Troy* v. *Scofield*, 39 Vt. 590.

The opinion of the court was delivered by

VEAZEY, J. The plaintiff's counsel argues that Abbott converted the $65 to his own use, while it was the defendant's money, by having the check credited to Abbott's account in the bank, instead of getting the money on the check as he was expected to do, and that therefore he did not hold it as a simple depositary for the plaintiff, when the agreement was made between the plaintiff and Abbott that the latter might have the use of it for thirty days. We think it is immaterial whether Abbott had the money on deposit in the bank, or had it in his pocket, when he and the plaintiff made that agreement. Both parties recognized, as the fact was, that Abbott had it as money paid by the defendant to Abbott for the plaintiff. The latter then assumed to deal with it as his own money by loaning it to Abbott. The legal effect of that transaction was just the same as though Abbott had gone through the form of handing the money over to the plaintiff, and he had returned it as a loan to Abbott. It was an appropriation of the money by plaintiff, therefore a completion of the payment by the defendant. What took place between them ten days afterwards, shows that the plaintiff so regarded it.

*Judgment affirmed.*